Alan J. Wenokur
Wenokur Riordan PLLC
Attorneys for Appellees
600 Stewart St., Suite 1300
Seattle, WA 98101
206-682-6224
alan@wrlawgroup.com

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IN RE: | BANKRUPTCY NO. 18-10441 |
| THOMAS RAOUL WILLIAMSON and JUDITH AYA WILLIAMSON, | INT APPEAL NO. 20-S006 |
| Debtors. | **USDC NO. 2:20-cv-01138-JCC** |
| GRASMAN-MONTGOMERY ENTERPRISES, INC., | |
| Appellant, | RESPONSE BRIEF OF APPELLEES THOMAS AND JUDITH WILLIAMSON |
| v. | |
| THOMAS RAOUL WILLIAMSON and JUDITH AYA WILLIAMSON, | |
| Appellees. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................ii

I.    STATEMENT RE: JURISDICTION ........................................... 1

II.   STATEMENT OF RECORD ON APPEAL ................................... 1

III.  STANDARD OF APPELLATE REVIEW ..................................... 2

IV.   STATEMENT OF THE CASE ..................................... 4

      A. Introduction. ..................................... 4

      B. GME refuses to abide by the Bankruptcy Court's order............................ 5

      C. GME refuses to accept a full payoff of its secured claim, in an attempt to
         get the Williamsons to pay more money. ..................................... 7

      D. The Bankruptcy Court finds GME in contempt of court for violating the
         bankruptcy discharge injunction. ............................. 8

      E. The Bankruptcy Court awards contempt damages................................. 10

V.    LEGAL ARGUMENT ..................................... 14

      A. The Bankruptcy Court's award of compensatory damages was entirely
         correct. . ..................................... 14

         1.  The Williamsons were legally capable of selling their property. ...... 14

         2.  The record supports the Court's finding that GME's actions caused
             the sale to fail. ..................................... 17

      B. GME did not contest below the $5,335 in fee sanctions......................... 19

VI.   CONCLUSION........................................... 21

PROOF OF SERVICE ........................................... 22

i

# TABLE OF AUTHORITIES

**Cases:**

*Bonded Adjustment Co. v. Helgerson*, 188 Wash. 176, 178 (1936) ...................... 15

*Great Nw. Fed. Sav. & Loan v. T. B. & R. F. Jones*, 23 Wash. App. 55 (1979).... 15

*Grothe v. Cortlandt,* 11 Cal. App. 4th 1313, 1321 (1992) ..................................... 16

*In re Roman,* 283 B.R.1, 9-10 (9th Cir. BAP 2002) .................................................. 3

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.,* 618 F.3d 988, 992 (9th Cir. 2010) ........................................................................................... 19, 20

*United States v. Hinkson,* 585 F.3d 1247, 1262 (9th Cir. 2009)............................... 3

*Whittaker Corp. v. Execuair Corp*., 953 F.2d 510, 515 (9th Cir. 1992)................ 20

**Statutes:**

RCW 6.21.030(2)(b) ............................................................................................... 15

RCW 6.23.010......................................................................................................... 15

RCW 64.04.010....................................................................................................... 14

RCW 64.04.020....................................................................................................... 14

**Court Rules:**

Fed. R. Bankr. P. 8009(b)(1)..................................................................................... 1

Fed. R. Bankr. P. 8009(b)(5)..................................................................................... 1

Fed. R. Civ. R. 62(a) ................................................................................................. 7

Appellees Thomas Williamson and Judith Williamson ("the Williamsons") submit this Brief in response to the Brief of Appellant Grasman-Montgomery Enterprises, Inc. ("GME").

## I.  STATEMENT RE: JURISDICTION

The Williamsons agree with Appellant GME that this Court has jurisdiction to hear this appeal.

## II. STATUS OF RECORD ON APPEAL

The record on appeal submitted by GME is grossly deficient.

GME did not file with its opening brief an excerpt of record as an appendix, as it was required to do under Bankruptcy Rule 8018(b). While GME did file a Designation of Record on Appeal (Doc. 5-1, at pp. 13-14), it is not clear to the Williamsons that a Designation alone, without the Appendix, is sufficient to make the relevant documents available for this Court to review.

GME also failed to either order a transcript of the relevant proceedings before the Bankruptcy Court, or file a certificate stating that it would not be ordering a transcript, in violation of Bankruptcy Rule 8009(b)(1). Under Bankruptcy Rule 8009(b)(5), an appellant who is arguing that a finding is unsupported by or contrary to the evidence *must* provide a transcript of all relevant testimony and copies of all relevant exhibits.

GME's failure to abide by the applicable Rules of Procedure and provide this Court with an adequate record to evaluate the merits (or lack thereof) of this appeal should permit this Court to reject GME's appeal on procedural grounds alone.

The Williamsons do not intend to rest solely on a procedural argument, however, as this appeal is entirely baseless by any measure. Accordingly, they have supplemented the record by ordering transcripts and filing them with this Court at Doc. 7. They are also providing an Appendix containing the orders below, the transcripts, and relevant declarations and evidence. Should they prevail on this appeal, the Williamsons request that GME be ordered to pay all costs associated with providing this Court with a record on appeal.

The Williamsons object in advance to any attempt by GME to supplement the record by filing record excerpts for the first time with its reply brief.

### III. STANDARD OF APPELLATE REVIEW

This appeal follows two orders issued by Bankruptcy Judge Timothy Dore. The first, entered on May 18, 2020, was an order that found GME in contempt of court for violating the Williamsons' Chapter 7 discharge. Appendix of Appellees Williamson ("App.") at 001. GME has not appealed from the order finding it in contempt of court. GME has appealed only from Bankruptcy Judge Dore's order of June 13, 2020, which awarded $51,044.45 in contempt sanctions. App. 003. *See*

2

Notice of Appeal, Part 2, at Doc. 1 p. 17. GME asks this Court on appeal to reduce the amount of the damages awarded.

A bankruptcy court's factual determinations made in awarding damages as sanctions are reviewable for clear error, while legal determinations in connection with that award are reviewed *de novo. In re Roman,* 283 B.R.1, 9-10 (9th Cir. BAP 2002) and cases cited therein. Except for one legal issue discussed below, GME's appeal rests entirely on alleged factual errors. Thus, reversal on those issues requires a finding of "clear error." GME agrees with the clear error standard. Brief of Appellant, p. 4., ll. 17-21.

To find there has been clear error, this Court must conclude that the Bankruptcy Court's findings of fact were illogical, implausible, or without support in inferences that may be drawn from the record. *United States v. Hinkson,* 585 F.3d 1247, 1262 (9th Cir. 2009).

This Court should easily conclude that Bankruptcy Judge Dore did not commit clear error in assessing the amount of sanctions. The Bankruptcy Court's findings were entirely logical, plausible, and supported by considerable evidence in the record.

## IV. STATEMENT OF THE CASE

### A. Introduction.

GME's Statement of the Case is inadequate to allow full consideration of this appeal. It fails to focus on the critical points that governed the Bankruptcy Court's rulings.

GME intentionally violated the Williamsons' bankruptcy discharge. That fact is undisputed in this appeal. Bankruptcy Judge Dore determined that GME had a secured claim against the Williamsons' real property for $100,000 plus accrued interest, with the balance of GME's claim discharged in the Williamsons' Chapter 7 bankruptcy case. But GME then asked a state court judge for an order allowing them to foreclose on a much higher amount than that allowed by the Bankruptcy Court, arguing to the state court that the federal court order could be ignored. For that reason, Bankruptcy Judge Dore found GME in contempt of court for attempting to collect on a discharged debt.

The Bankruptcy Court then assessed consequential damages resulting from GME's contempt. When the Williamsons tried to sell their house to pay GME's $100,000-plus-interest lien claim in full, GME refused to consent to a payoff for that amount, causing the sale to fail. The Williamsons thereafter found a new buyer, but that sale was for nearly $30,000 less. Judge Dore assessed contempt

damages based on the difference in proceeds between the lost first sale and completed second sale, as well as compensatory attorney's fees.

The primary issue in this appeal is whether there was factual support for Judge Dore's conclusion that the decline in price between the first and second sale was an appropriate measure of contempt damages.

In addition, GME complains about $5,535.00 in sanctions for certain particular services. As discussed below, GME did not make this argument to the Bankruptcy Court, so it should be prohibited from raising it on appeal for the first time.

**B. GME refuses to abide by the Bankruptcy Court's order.**

GME was a prepetition creditor of the Williamsons, holding a promissory note for a business purchase and sale. It held a deed of trust against the Williamsons' residential real property in Seattle, which secured only a portion of the total debt owed by the Williamsons to GME.

Following an objection by the Williamsons to the amount of GME's asserted secured claim, Bankruptcy Judge Dore concluded that the secured claim under GME's deed of trust was limited to $100,000. The Court entered an order allowing GME's secured claim for that amount plus interest, a total of $116,466.16. Details and findings are found in the transcript of Judge Dore's oral ruling on the claim

objection, beginning at App. 049, and in Judge Dore's oral ruling on the May 15 contempt hearing, beginning at 4:17, App. 008.

Because the Williamsons received a Chapter 7 discharge on May 18, 2018 (Doc. 1, p. 7, docket entry 41), GME had no claim against the Williamsons personally coming out of the bankruptcy case. Its only claim consisted of a $116,466 *in rem* claim against the Williamsons' real property.

After the bankruptcy case closed, GME brought a motion in state court to foreclose its lien against that property. But instead of asking the state court to enter an order foreclosing a judgment for the secured claim of $116,466, GME asserted an additional claim of $119,467.14, and asked for a judgment of foreclosure on a total asserted claim of $246,060. App. 069.

At a contested hearing, GME argued that the state court was not bound by the federal court order. King County Superior Court Judge Andrea Darvas disagreed, adopting the Williamsons' position that the Bankruptcy Court had already determined the amount of GME's claim and GME could not seek an additional amount. She entered a judgment and decree of foreclosure, as an *in rem* judgment only, for $126,593.14 ($116,466 plus additional accrued interest). App. 077.

GME moved for reconsideration, which Judge Darvas denied. App. 081 (Motion); App. 088 (Order). GME then appealed Judge Darvas's order to the

Washington Court of Appeals, but voluntarily dismissed its appeal prior to briefing.

**C. GME refuses to accept a full payoff of its secured claim, in an attempt to get the Williamsons to pay more money.**

The state court judgment authorized GME to foreclose its lien. GME sought and obtained an order setting a sheriff's sale of the property. That order was later quashed on the Williamsons' motion because it was obtained in violation of the 10-day statutory stay on execution on judgments in Civil Rule 62(a). App. 094.

While the sheriff's sale was pending and prior to the levy being quashed, the Williamsons entered into a purchase and sale agreement for the property for $746,250, with a scheduled closing date of March 27, 2020. The sale price was more than sufficient to satisfy GME's lien in full and return money to the Williamsons as sellers. App. 132.

The sale did not close, however, because GME would not provide a payoff that would allow clear title to be given to the purchaser. Despite attempts to get GME to send payoff information and a release to escrow, GME declined to participate in the process. Instead, it insisted that it had the right to have the sheriff sell the property, and that it could pocket any surplus from the sale after its judgment was paid. *See* emails at App. 097-104. In particular, GME through its counsel offered to consider a "settlement" where either GME received additional

money from the private sale beyond its judgment amount, or would take a deed in lieu of foreclosure in return for payment to the Williamsons "of some amount of cash." App. 104.

The sale failed to close by the March 27 closing deadline, after GME failed to provide a payoff amount and release in return for full satisfaction of the judgment. The buyer would not agree on an extension of the closing date. Declaration of Judith Williamson at App. 132.

The Williamsons put the house back on the market. They found a buyer at $720,000. After GME agreed to an order holding back proceeds pending resolution of the state court appeal, the sale closed. App. 133.

**D. The Bankruptcy Court finds GME in contempt of court for violating the bankruptcy discharge injunction.**

The Williamsons returned to Bankruptcy Court and moved for an order of contempt. The motion was supported by, among other things, a declaration from the Williamsons' counsel describing efforts to get the first sale closed and GME's refusal to provide a payoff, along with a series of emails related to that effort. The Declaration begins at App. 044 with all exhibits following thereafter.

At hearing on May 15, 2020, Bankruptcy Judge Dore found GME in contempt of court. In doing so he made a number of findings that are not contested

in this appeal, found in the May 15 Transcript. Doc. 7 pp. 5-14; App. beginning at 009. These include:

- Following contested hearing, the Bankruptcy Court determined that GME's secured claim was limited to $100,000, with interest at 4.5%.

- After that ruling, and after the bankruptcy case closed, GME sought to foreclose its deed of trust and, if its efforts were successful, would have been able to collect far in excess of the secured claim determined in the bankruptcy case.

- The state court judge ruled in favor of the Williamsons, based on preclusion.

- GME violated the discharge injunction. The discharge limited GME to an *in rem* claim in the Williamsons' property limited to the secured claim amount. When GME sought in the state court case more than the amount of the allowed secured claim, it was attempting to collect a discharged debt and violated the discharge injunction.

- GME did not have an objectively reasonable basis for taking the position that it did in state court. It was not objectively reasonable for GME to believe that it could be awarded more in state court than it was awarded in federal court.

- The Williamsons were entitled to a compensatory remedy including compensatory damages, attorney fees, and any damages necessary to obtain the offending creditor's compliance.

Because Judge Dore noted "facts in dispute as to whether GME's conduct caused the debtor's first sale of the property, that is subject to GME's deed of trust, to fall through," and because there was insufficient information about the attorney fee request, he invited further submissions including attorney time records. App. 015. The Court added:

> It is possible that we'll ultimately need an evidentiary hearing, but the first step is to have the debtors submit their specific damage claim with supporting evidence, and then have GME submit a response as to any portion thereof it disputes. Then we can have another hearing, at which time I can decide whether the matter can be determined on the record as it then exists, or whether an evidentiary hearing should be set to take testimony.

Transcript 5/15 p. 11, at Doc. 7 p. 13; App. 015.

**E. The Bankruptcy Court awards contempt damages.**

The parties then submitted additional materials. The Williamsons filed a declaration from Judith Williamson attaching the failed purchase and sale agreement, describing efforts to close, confirming that the first sale did not close because title did not have a payoff from GME, and describing the second sale and quantifying at $29,692 the amount of lost proceeds ($26,250 lower sales price plus $3,442 in additional interest paid on the secured debt due to delay). App. 132-134.

10

Also submitted were detailed billing records from the Williamsons' counsel in support of the fee request. App. 122-129.

The parties went back in Bankruptcy Court on July 10 for oral argument on the damage request. Judge Dore began his oral remarks by indicating that he had "spent a significant amount of time on this one sorting through all the parties' submissions." Transcript 7/10, at 3:5-6, Doc. 7 p. 19, App. 020.

Judge Dore approved the entire attorney fee request. In doing so, he noted that GME had not contested the reasonableness of the fee request:

> GME did not contest any aspect of the reasonableness of the fees. GME did not take issue with the hourly rate charged, the amount of time spent, or the services performed….Mr. Wenokur's time records reflect that the services he performed were necessary to protect the debtors against unwarranted claims for legal fees by GME and were performed in an efficient manner. So the amount of legal fees requested is reasonable. All of the fees incurred are compensable, as they flow directly from GME's violation of the discharge injunction.

Transcript 7/10, at 6:24 to 7:13, Doc. 7 pp. 22-23; App. 023-024.

Implicit in the Court's statement that GME did not contest any aspect of the reasonableness of fees is that GME did not specifically challenge the particular services that add up to $5,335 and are questioned for the first time in GME's brief on appeal.

Judge Dore next addressed whether the Williamsons should be awarded damages due to the failure of the first sale to close. He initially dismissed GME's argument related to the effect of the pending sheriff's sale (discussed below,

beginning at p. 14). He then discussed the factual issue of whether GME caused

the sale not to close. He noted that there were competing facts as to the events

leading up to the closing date of March 27. He then concluded that he did not need

to resolve that factual dispute, stating (quoted here at length, since it establishes

that the Court rationally based its decision on facts in the record):

> The undisputed fact that is critical to my decision is that GME never
> provided a payoff figure at any time between when one was first requested
> on March 10 and the closing deadline of March 27. The evidence is also
> uncontroverted on the point that had GME provided an accurate payoff
> figure when requested, the sale would have closed.

> The only evidence GME offers for its failure to provide a payoff figure is
> Ms. Grasman's statement that she preferred a foreclosure sale to a
> voluntary sale because it might result in GME realizing equity in the
> property. While it is perfectly fine for GME to prefer a foreclosure sale, it
> needed to provide the payoff figure. It had no right to refuse payment on
> its debt. It appears, from Ms. Grasman's declaration, that she believed
> GME did not need to provide a payoff figure because the debtors had no
> right to sell the property due to the levy. But as I have already explained,
> that belief was incorrect.

> Ms. Grasman does, in conclusory fashion, state GME did nothing to
> impede the debtors' sale, "because of its claim for attorneys' fees." But the
> facts do not support that conclusion. It is clear that the only way for GME
> to preserve a potential attorneys' fees claim was to not submit a payoff
> figure and, thereby, prevent the sale from closing. The reason for this is
> because at all times between March 10 and March 27, if GME had
> submitted a payoff figure, it would not have been able to include any
> attorney's fees.

> This is true because at least four documents prohibited the attorney's fees
> claim: (1) the claim order, (2) the state court's February 24, 2020
> judgment, (3) the sheriff's March 9 levy and related notice, which stated
> the cure amount to be the same amount as the February 24 judgment, and

(4) the state court's March 20, 2020 order denying GME's motion for
reconsideration.

As evidenced by GME's motion for reconsideration, during this key time
period, it was still actively seeking attorneys' fees that had been
discharged. By refusing to provide a payoff statement for its non-
discharged secured claim during a time it was still actively seeking
discharged attorneys' fees, GME was violating the discharge injunction
and caused the failed sale damages.

Transcript 7/10, at 11:15 to 13:5, Doc. 7 pp. 27-29; App. 028-030.

Based upon these findings, the Bankruptcy Court awarded the Williamsons

$51,044.45 in sanctions, including $29,692 in damages related to the failed first

sale, and $21,352.45 in attorneys' fees and costs. The Williamsons were also given

leave to file for additional sanctions.[1]

GME states in its brief: "There are absolutely no facts in the record

demonstrating that the status of documents due from GME impeded the timely

closing." Brief of Appellant at 8:1-2.[2] This is obviously not true; there are a

number of facts, including emails illustrating GME's refusal to engage in the sale

process, and a sworn declaration from Ms. Williamson. For Judge Dore, the critical

undisputed fact was that GME did not provide a payoff to escrow prior to the

---

[1] The Williamsons intend to seek additional sanctions for fees incurred in bankruptcy and state court and in
connection with this appeal.

[2] Again, since GME has not presented *any* factual record in support of its appeal, in violation of the rules on appeal,
it cannot meet its burden of establishing a lack of support in the record.

closing date. It is uncontroverted in the record that the sale would have closed had GME done so.

## V. LEGAL ARGUMENT

### A. The Bankruptcy Court's award of compensatory damages was entirely correct.

The Bankruptcy Court was more than justified in awarding compensatory contempt sanctions equal to the difference in proceeds between the failed first sale and the completed second sale of the Williamsons' property. GME's position on appeal is unsupported by the law and the facts in the record.

### 1. The Williamsons were legally capable of selling their property.

GME argues first that the Williamsons could not have sold their property in March 2020 because they did not have title to the property at that time. It contends that the King County Sheriff's levy setting a future foreclosure sale date had the legal effect of divesting the Williamsons of their legal ability to sell their own property. GME offers no authority whatsoever for this proposition.[3] GME is wrong, for several reasons.

First, Washington law requires real property conveyances to be by deed. RCW 64.04.010. A deed is in writing, signed by the party to be bound, and

---

[3] Bankruptcy Judge Dore in his oral ruling noted the lack of Washington case law specifically addressing the question. Judge Dore then analyzed the effect of a Sheriff's levy in light of Washington law on title transfers, redemption rights, and related processes. GME has offered nothing in this appeal to challenge that analysis.

acknowledged by a notary public or similar officer. RCW 64.04.020. A sale order and a sheriff's levy are not *deeds*. An execution levy is a seizure for the purpose of enabling a future sale of the property as necessary to satisfy a judgment. The state court does not convey legal title to the sheriff. Rather, the sheriff is given the authority to hold a foreclosure sale. That authority vanishes, and the levy is released, if the judgment debtor pays the amount needed to satisfy the judgment. *See* form of Sheriff's Notice at RCW 6.21.030(2)(b) ("The judgment debtor can avoid the sale by paying the judgment amount of $ . . . ., together with interest, costs, and fees, before the sale date.")

Second, even if a foreclosure sale were to take place, the certificate issued following a foreclosure sale does not pass title to the buyer at the sale. *Bonded Adjustment Co. v. Helgerson*, 188 Wash. 176, 178 (1936) ("a certificate of sale executed by a sheriff does not vest title, being at most but evidence of an inchoate estate that may or may not ripen into an absolute title.") The Sheriff does not have title, and does not convey title to the purchaser.

Third, GME's argument ignores a property owner's redemption rights following foreclosure. Homeowners who lose their homestead residence at a sheriff's sale are still permitted to voluntarily sell the house, after the foreclosure sale and during the statutory redemption period. RCW 6.23.010 *et seq*.; *Great Nw. Fed. Sav. & Loan v. T. B. & R. F. Jones*, 23 Wash. App. 55 (1979). Since the levy

15

did not convey title, and owners may retain sale rights even *after* a foreclosure sale, the Williamsons certainly were legally able to sell their property *before* the foreclosure sale took place.[4] They simply had to sell it for enough to pay off the levy. There is no dispute that the failed sale would have satisfied the levy in full.

In his oral ruling, Judge Dore noted that other jurisdictions that had addressed this question agree that a sheriff's levy does not result in a change in title. *Grothe v. Cortlandt,* 11 Cal. App. 4th 1313, 1321 (1992), and cases cited therein. In its Brief (at p. 12), GME attempts to distinguish this case as being limited to California law by pointing only to the language of the Sheriff's levy in this case. But it is not the language of the levy document that controls; it is how a court would interpret the legal effect of a levy. Just because there are words in the document that GME believes could be read as an interest on title does not mean that there is a change in title as a matter of law.

Fourth, it is indisputably the case that had a levy not been issued, the Williamsons could have voluntarily sold the property to pay GME's judgment. There is no legal authority for a different result where a levy has issued but the property has not yet been transferred at a sheriff's sale.

---

[4] In this case, the Williamsons did not have a redemption right available, because they stopped using the property as their homestead prior to March 2020. This is a distinction without a difference. The critical legal point is that the existence of statutory redemption rights is incompatible with GME's unsupported argument that a sheriff's levy divests a property owner of the ability to complete a voluntary transfer prior to the execution sale.

Fifth, GME's argument that the Williamsons could have avoided the legal effect of the levy by obtaining a stay of the sale or paying off the judgment is both legally incorrect (in that it misinterprets the legal effect of a sheriff's levy) and wholly absurd. The Williamsons attempted to pay GME by selling their house. GME blocked the sale based on its erroneous belief that it did not have to accept a payoff.

For these reasons, there was no legal impediment to the Williamsons selling their house by March 27, 2020 despite the existence of a sheriff's levy.

**2. The record supports the Court's finding that GME's actions caused the sale to fail.**

GME next argues that it did not cause the sale to fail to close, because it was ready to provide the documentation necessary to permit closing. This Court may easily reject this argument on appeal, since Judge Dore did not clearly err by finding otherwise. In fact, there is ample support in the record for the Bankruptcy Court's conclusion.

As Judge Dore explained in his oral ruling, critical to his decision was the undisputed fact that GME had ample time to provide a payoff figure to the escrow officer but that GME did not do so.

The Williamsons had a purchase and sale agreement ready to close that would satisfy the judgment in full. All they needed was for GME to conform to

commercial norms by providing to escrow a payoff along with a reconveyance of the deed of trust and satisfaction of judgment, to be held and exchanged for the payment. Instead, GME refused to cooperate, and tried to extort more money from the Williamsons as a condition of sale.

Further, GME admitted in its response to the sanctions request that it was aware of the pending sale but took no action to provide a payoff. GME's principal Lisa Grasman stated in her declaration that GME preferred to have the property sold at a sheriff's sale so that GME could "gain the benefit of any equity that was in the property." App. 136.

Further support is found in the emails between counsel, especially attorney Scott Milburn's emails on March 22, 2020, which were written after the Superior Court denied GME's motion for reconsideration, but prior to the March 27 closing date. Mr. Milburn stated that he would not provide anything to escrow unless the Williamsons agreed to either deed the property to GME or pay GME an additional amount on their fees. App. 103-104.

Also in the record was Judith Williamson's declaration stating why the sale did not close and the amount of money lost as a result. App. 132.

GME makes broad assertions in its appeal brief about how it was ready to close the March sale. But it provides no record to this Court in support. The Court should ignore these unsupported assertions.[5]

In sum, Bankruptcy Judge Dore's conclusion that the first sale would have closed but for GME's failure to participate in the closing by providing a payoff amount to the escrow officer is supported in the record below, and is a logical conclusion resulting from GME's inaction. The ruling was not by any means illogical, implausible, or without support in the record. There was no clear error. GME fails entirely to meet its burden on appeal.

**B. GME did not contest below the $5,335 in fee sanctions.**

The record provided to this Court shows that GME never asked the Bankruptcy Court to opine on the $5,335.00 in fees GME now says are noncompensable as sanctions damages. As noted above, Judge Dore found that GME did not contest the reasonableness of fees, and the Court found that they all flowed from the contempt.

At no point did GME raise any issue regarding the specific line-items listed on pp. 7-8 of its Brief. It did not argue to Judge Dore that any particular entry on counsel's invoice was unreasonable, inappropriate, or so divorced from the

---

[5] Somewhat astoundingly, GME states in its Brief on Appeal that "GME's attorney has 13 emails between him and people at Fidelity regarding the closing." Brief at 14:1. GME made that same assertion before Judge Dore, but never put any of those alleged emails into the Bankruptcy Court record. Even if GME had provided every page of the Bankruptcy Court record to this Court, one would not see any of those 13 apparently fictional emails.

contempt action as to be noncompensable. Yet here for the first time, GME argues that this Court should reverse the Bankruptcy Court with respect to 22 particular time entries.

This Circuit applies the "general rule" against considering arguments on appeal that were not presented or developed before the lower court. *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.,* 618 F.3d 988, 992 (9th Cir. 2010). Although there is no "bright-line rule" as to whether a matter has been properly raised below, an issue will generally be deemed waived on appeal if the argument was not "raised sufficiently for the trial court to rule on it." *Whittaker Corp. v. Execuair Corp*., 953 F.2d 510, 515 (9th Cir. 1992) (quoting *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc*.), 887 F.2d 955, 957 (9th Cir. 1989)).

The Circuit has identified "only three circumstances" where an appeals court may exercise its discretion to consider issues not presented below: in the "exceptional case" in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process; when a new issue arises because of a change in the law; and when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed. *Mercury Interactive Corp, supra,* at 992.

None of the three circumstances articulated in *Mercury Interactive* are present. This not a miscarriage of justice, nor has there been any change in the law.

Nor is this a pure issue of law. Finally, a decision on appeal would depend on the record below, but by not raising the issue below GME lost the opportunity to have a record developed for the appeal. Had GME contested the 22 time entries in Bankruptcy Court, the Williamsons and their counsel would have had the ability to identify why the specific actions were compensable, and the Bankruptcy Court could have considered the evidence.

In addition, GME offers no serious analysis as to why Bankruptcy Judge Dore would have committed clear error in awarding the $5,335 represented by the particular line-items as contempt damages.

## VI. CONCLUSION

GME's appeal is meritless by any measure. The Court should affirm the decision below, and award costs on appeal to the Williamsons. The Williamsons reserve the right to seek fees on appeal from the Bankruptcy Court as additional contempt damages.

SUBMITTED October 23, 2020.

*/s/ Alan J. Wenokur*

_____
Alan J. Wenokur, WSBA # 13679
WENOKUR RIORDAN PLLC
Attorneys for Thomas and Judith Williamson
600 Stewart St., Suite 1300
Seattle, WA 98101
206-682-6224
alan@wrlawgroup.com

# PROOF OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the United States of America, that she has, on the date shown below, caused a copy of this Brief of Appellees, along with the Appendix, to be sent by email to the following attorney for Appellant:

Scott Milburn
smilburn@advocateslg.com

Dated October 23, 2020, at Seattle, Washington.

*/s/ Shelby Smith*

_____

Shelby Smith
Legal Assistant
Wenokur Riordan PLLC