THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>THOMAS RAOUL WILLIAMSON and<br>JUDITH AYA WILLIAMSON,<br><br>Debtors. | CASE NO. C20-1138-JCC<br><br>ORDER ON APPEAL |
| GRASMAN-MONTGOMERY<br>ENTERPRISES, INC.,<br><br>Appellant,<br><br>v.<br><br>THOMAS RAOUL WILLIAMSON and<br>JUDITH AYA WILLIAMSON,<br><br>Appellees. | |

This matter comes before the Court on Appellant Grasman-Montgomery Enterprises, Inc.'s ("GME") opening brief (Dkt. No. 8), Appellees Thomas Raoul Williamson and Judith Aya Williamson's response brief (Dkt. No. 9), and Appellant's reply brief (Dkt. No. 10). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument

unnecessary and hereby AFFIRMS the decision of the United States Bankruptcy Court for the Western District of Washington ("Bankruptcy Court") for the reasons explained herein.

## I. BACKGROUND

Appellee Thomas Williamson purchased a chiropractic clinic in West Seattle from Lisa Grasman, the principal of Appellant GME. *See In re Williamson*, Case No. 18-10441-TWD, Dkt. No. 56 at 2 (Bankr. W.D. Wash. 2019). GME financed the purchase, and Mr. Williamson executed a promissory note and deed of trust in favor of GME, encumbering the Williamsons' residential property. *Id.* at 6–28. The Williamsons defaulted a month later. *See id.*, Dkt. No. 58 at 6. The parties participated in arbitration, with the arbitrator awarding GME $287,918.99, which included the amount due on the promissory note and was secured in part by the deed of trust. *See id.*, Dkt. No. 56 at 48, 51.

The Williamsons declared bankruptcy shortly after the arbitration award and objected to the amount of GME's asserted secured claim. *Id.*, Dkt. No. 56. The Bankruptcy Court ruled that the secured portion of GME's claim was limited to $100,000 plus interest and it discharged the remainder of GME's claim. *See id.*, Dkt. No. 62. The secured amount did not include attorney fees. *Id.* GME then moved in state court for an order foreclosing on the Williamsons' property, seeking a foreclosure judgment that included attorney fees; if successful, this would have allowed GME to collect an amount in excess of its secured claim as determined by the Bankruptcy Court. (Dkt. No. 7 at 8); *In re Williamson*, Case No. 18-10441-TWD, Dkt. No. 74-2 at 3. The state court entered a judgement and decree of foreclosure but limited the amount of GME's secured claim to the amount determined by the Bankruptcy Court. (Dkt. No. 9-2 at 78); *see In re Williamson*, No. 18-10441-TWD, Dkt. No. 74-3 at 2. On March 6, 2020, GME filed a motion for reconsideration, which the state court denied on March 20, 2020. (*See* Dkt. No. 9-2 at 81, 88); *In re Williamson*, No. 18-10441-TWD, Dkt. No. 74-4, 74-5. GME appealed. *Id.*, Dkt. No. 83 at 3.

On March 9, 2020, the King County sheriff levied the property. *See In re Williamson*, No. 18-10441-TWD, Dkt. No. 85-2 at 4–6. The levy was later quashed because it was obtained in violation of the 10-day statutory stay on execution. (*See* Dkt. No. 9-2 at 94.) Meanwhile, the Williamsons entered into a purchase and sale agreement for the property for $746,250, set to close on March 27, 2020. *See In re Williamson*, No. 18-10441-TWD, Dkt. No. 84-1. GME did not provide a payoff figure when requested to do so by the Williamsons, and the sale failed to close. *Id.*, Dkt. No. 84 at 1–2. In April, the Williamsons found another buyer and the sale closed at $720,000. *See id.* at 2; (Dkt. No. 9-2 at 133.)

The Bankruptcy Court held GME in contempt of court, finding that GME had violated the discharge injunction by attempting to collect a discharged debt with its claim for attorney fees in the foreclosure action. (*See* Dkt. No. 9-2 at 1, 14–15.) By separate order, the Bankruptcy Court awarded the Williamsons $51,044.45 in contempt sanctions, which included $21,352.45 in attorney fees and $29,692 in lost proceeds from the first private sale. In imposing the sanctions, the Bankruptcy Court found that the first sale's failure to close was a consequence of GME's violation of the discharge injunction. (*See* Dkt. No. 9-2 at 3.) GME does not challenge the order finding it in contempt but appeals from the order granting sanctions. (*See* Dkt. No. 8 at 9.)

## II. DISCUSSION

This Court has appellate jurisdiction over a final order and judgment from the Bankruptcy Court. 28 U.S.C. § 158(a)(1). The Bankruptcy Court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re EPD Inv. Co., LLC*, 821 F.3d 1146, 1150 (9th Cir. 2016). The Court will hold the Bankruptcy Court's findings clearly erroneous only if firmly convinced that a mistake has been made, *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948), or if they are "illogical, implausible, or lacking support

from the record." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010). A "mere showing that the bankruptcy court could have reached another conclusion based upon the evidence presented is insufficient." *In re Hongisto*, 293 B.R. 45, 49 (N.D. Cal. 2003), *aff'd*, 86 F. App'x 331 (9th Cir. 2004).

**A. Record on Appeal**

As a preliminary issue, the Williamsons argue that GME failed to provide an adequate record on appeal. (Dkt. No. 9 at 1–2.) They argue that the Court can reject GME's appeal on this procedural ground alone, and that, if the Court reaches the merits, GME should be required to pay the Williamsons' costs for providing transcripts and excerpts of the record. (*Id.* at 2.)

    1. <u>Legal Standard</u>

As the appellant, GME has the responsibility to provide an adequate record on appeal. *In re Kritt,* 190 B.R. 382, 387 (9th Cir. BAP 1995). Federal Rule of Bankruptcy Procedure 8009 requires an appellant to designate the items to be included in the record on appeal. Fed. R. Bankr. P. 8009(a)(1)(A). Among other things, the appellant must designate "any opinion, findings of fact, and conclusions of law relating to the issues on appeal including transcripts of all oral rulings." Fed. R. Bankr. P. 8009(a)(4). The appellant must also order the transcripts from the court reporter. Fed. R. Bankr. P. 8009(b)(1). In addition to designating the record, an appellant must serve and file with its brief an appendix containing excerpts of the record, including any relevant transcripts. *See* Fed. R. Bankr. P. 8018(b)(1).

The bankruptcy rules allow an appellee to designate additional items to be included in the record, *see* Fed. R. Bankr. P. 8009(a), and to file with its brief excerpts of the record in an appendix "that contains material required to be included by the appellant . . . but omitted by appellant," Fed. R. Bankr. P. 8018(b)(2). The Court may also, by order in a particular case,

dispense with the appendix requirement. *See* Fed. R. Bankr. P. 8018(e).

"An attempt to reverse the [bankruptcy] court's findings of fact will require the entire record relied upon by the [bankruptcy] court be supplied for review." *In re Kritt*, 190 B.R. 382, 387 (9th Cir. BAP 1995). And where, as here, the bankruptcy court orally issues factual findings and legal conclusions on the record, "it is mandatory that an appellant designate the transcript" as "[t]here is no other way for an appellate court to be able to fathom the trial court's action." *In re McCarthy*, 230 B.R. 414, 417 (9th Cir. BAP 1999). An appellant's failure to provide a transcript may result in dismissal or summary affirmance of the bankruptcy court's decision. *Hall v. Whitley*, 935 F.2d 154, 165 (9th Cir. 1991). But if informed review is possible in light of what record has been provided, the Court may disregard the procedural defects and resolve the appeal on the merits. *In re Kyle*, 317 B.R. 390, 393 (9th Cir. BAP 2004).

2. <u>Analysis</u>

GME properly designated as the record on appeal the filings and evidence relied on by the Bankruptcy Court in deciding whether to impose contempt sanctions. (*See* Dkt. No. 5.) But GME did not designate or order the transcript of the Bankruptcy Court's oral ruling that is the subject of this appeal. Nor did GME serve and file an appendix of the relevant record with its brief or seek relief from that requirement. The Williamsons, however, ordered the transcripts of the Bankruptcy Court's oral rulings finding GME in contempt and imposing sanctions, and provided the transcripts in an appendix filed with their brief. (*See* Dkt. No. 9-2.) Because GME's designation of the record on appeal, supplemented with the transcripts provided by the Williamsons, provides an adequate record to review the Bankruptcy Court's decision, the Court exercises its discretion to proceed to the merits.

The Court declines the Williamsons' request for an order requiring GME to pay its costs

for supplementing the record. (*See* Dkt. No. 9 at 2.) Rules 8009(a) and 8018(b)(2) contemplate times where the appellee may need to designate items that the appellant should have, but failed to, designate, yet these rules do not provide for the recovery of costs. Nevertheless, the Court admonishes appellant's counsel for failing to provide the required transcripts and appendix.

### B. Contempt Sanctions

Contempt sanctions must be either compensatory or designed to coerce compliance with a court order. *See In re Dyer*, 322 F.3d 1178, 1193 (9th Cir. 2003). Here, the Bankruptcy Court granted compensatory sanctions, finding GME caused the March 2020 private sale to fall through by attempting to collect attorney fees in violation of the discharge injunction and that the Williamsons incurred attorney fees in opposing GME's efforts to collect the discharged debt. (*See* Dkt. No. 9-2 at 30.) GME raises two issues on appeal: (1) whether the Bankruptcy Court erred in finding that the sale which was scheduled to close in March 2020 failed to close as a consequence of GME's violation of the discharge injunction (such that contempt sanctions equal to the difference in proceeds between the failed sale and the completed sale were appropriate) and (2) whether the Bankruptcy Court erred in finding that all the attorney fees sought by the Williamsons as contempt sanctions were incurred as a consequence of the violation of the discharge injunction.

#### 1. Difference in Proceeds Between the Failed Sale and the Completed Sale

GME asserts there are no facts in the record to support the Bankruptcy Court's finding that the March 2020 sale failed to close because of GME's violation of the discharge order. (*See* Dkt. No. 8 at 10.) GME argues (1) that it did not cause the March 2020 sale to fall through and (2) that, regardless of whether it impeded the March 2020 sale, the failure to close was unrelated to its discharge violation. (*See* Dkt. No. 8 at 10, 14.)

### a. Whether GME Impeded the March 2020 Sale

GME argues that it did not cause the March 2020 sale to fall through because (1) the Williamsons could not have conveyed the property to the buyers because, at the time the sale was to close, the sheriff had title and (2) GME was prepared to close and did not impede the sale. (*See* Dkt. No. 8 at 10, 12.) Whether the Williamsons had the ability to convey title to the buyers, despite the sheriff's levy, is a question of law that the Court reviews *de novo*. Whether GME was prepared to close is a question of fact that the Court reviews for clear error.

Although Washington law permits debtors to stop a foreclosure sale after a sheriff's levy by paying the creditor's judgement prior to the sale, *see* Wash. Rev. Code § 6.21.030(2)(b), it is less clear if a debtor can voluntarily sell the property to satisfy the judgement. Neither the Bankruptcy Court nor this Court were able to locate any precedent in Washington addressing the issue, nor did GME provide any. (*See generally* Dkt. Nos. 8, 10; *see also* Dkt. No. 9-2 at 26.) Other jurisdictions that have addressed this issue have held that a sheriff's levy does not affect title until the moment of sale. *See Grothe v. Cortlan*dt, 11 Cal. App. 4th 1313, 1321 (1992).

Likewise, this Court concludes that, under Washington law, debtors may hold a voluntary sale after a sheriff's levy but before a foreclosure sale for two reasons. First, real property must be conveyed by deed, *see* Wash. Rev. Code § 64.04.010, and neither the sale order nor the sheriff's levy constitute a deed. Although the sheriff has authority to grant a sheriff's deed after the real property has been sold at a foreclosure sale, *see* Wash. Rev. Code § 6.21.120, neither the sale order nor the levy passes the deed *to* the sheriff. Therefore, before the foreclosure sale occurred, the property in this case had not been conveyed to any other party by deed. Second, redemption rights for homestead properties permit debtors to voluntarily sell their property during a redemption period even after a foreclosure sale. *See Great Northwest v. TB and RF*

*Jones*, 596 P.2d 1059, 1061 (Wash. App. 1979). The fact that debtors can, in some circumstances, sell their property even after a sheriff's sale further supports the conclusion that debtors can sell after a levy but before a sale. For these reasons, this Court agrees with the Bankruptcy Court that the Williamsons retained the ability to sell their property in March 2020.

GME next argues that there "are absolutely no facts" in the record to support the Bankruptcy Court's finding that GME caused the March 2020 sale to fall through. (*See* Dkt. No. 8 at 9–10.) GME asserts its willingness to allow the voluntary sale is evidenced by (1) an agreement several days before closing between the parties precluding the need for a payoff figure and (2) communications with the closing agent, specifically 13 e-mails between GME's attorney and Fidelity, showing that GME was willing to provide the necessary documents but was waiting on confirmation from the title company. (*Id.* at 12–14.) Although GME provided declarations from its counsel attesting to the truth of these assertions, *see In re Williamson*, No. 18-10441-TWD, Dkt. Nos. 78 at 1–3, 85-1 at 1, appellee Judy Williamson also submitted a declaration averring that the sale failed because GME would not provide title and escrow with the payoff amount and the buyers were not willing to wait any longer for the figure, *id.*, Dkt. No. 84 at 1–2. In light of all the evidence, the Bankruptcy Court did not clearly err in finding the sale fell through because of GME's refusal to provide a payoff figure.

> b. *Whether the March 2020 Failure to Close was a Consequence of GME's Violation of the Discharge Injunction*

GME also argues that even if it impeded the March 2020 sale, its violation of the discharge injunction was not what caused the sale to fall through. (*See* Dkt. No. 8 at 14.) But the Williamsons provided emails showing that, as late as March 22, 2020, five days before closing, GME refused to provide a payoff figure and instead sought a "settlement" that would "[c]ancel the sheriff's sale so the private sale can go through, with a portion of the net proceeds going to

[GME] or "[p]rovide a deed in lieu of foreclosure in exchange for payment to [GME] of some amount of cash." (Dkt. No. 9-2 at 104.) The evidence before the Bankruptcy Court also showed that GME was still actively seeking attorney fees in the state court system, through a motion for reconsideration and then an appeal, at the time the sale was supposed to close. *See generally In re Williamson*, No. 18-10441-TWD, Dkt. Nos. 74-4, 74-5. Had GME provided the payoff figure in March before closing, it would not have been able to claim attorney fees. This evidence supports the Bankruptcy Court's finding that GME was attempting to impede the sale so it could recover the attorney fees that had been discharged. Therefore, GME has failed to show that the Bankruptcy Court clearly erred.

        2. <u>Attorney Fees</u>

The Bankruptcy Court also ordered GME to pay the Williamsons $21,352.45 in attorney fees for services performed to defend against GME's efforts to collect discharged debt. GME argues that the sanction should be reduced by $5,535. (*See* Dkt. No. 8 at 15.) GME's brief includes a chart of the specific fees it is challenging and argues summarily that these fees would have been incurred by the Williamsons regardless of whether GME had sought to collect discharged debt in the foreclosure action. (*See* Dkt. No. 8 at 8–9.)

As a threshold matter, the Williamsons argue that GME did not object to these specific line-items in the Bankruptcy Court and therefore did not properly preserve this issue for appeal. (*See* Dkt. No. 9 at 22–23.) The Court disagrees. GME sufficiently preserved this issue by arguing to the Bankruptcy Court that the only legal fees the Williamsons incurred as a violation of the discharge injunction were the fees for the motion for contempt. *See In re Williamson*, No. 18-10441-TWD, Dkt. No. 85 at 7.

Nevertheless, GME has not demonstrated that the Bankruptcy Court clearly erred in finding that the fees at issue flowed from GME's contempt. GME's chart of the purportedly unrelated fees is misleading. A comparison of GME's chart with the invoices in the record shows that GME revised many of the contested line items in a way that makes the activities appear

ORDER ON APPEAL
C20-5106-JCC
PAGE - 9

unrelated to GME's discharge violation. For example, the charge on March 20, 2020, which GME lists as "emails re payout," (Dkt No. 8 at 9), is listed on the invoice in the record as "emails re no payout from GME; tel conf with title officer; review order denying [re]consideration," (Dkt. No. 9-2 at 124)—activities indisputably linked to GME's discharge violation. Similarly, the charge on March 23, which GME purports is for "emails re closing," (Dkt. No. 8), is listed on the invoice in the record in part as "analyze law re ability to refuse full tender," (Dkt. No. 9-2 at 124).

## III. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Bankruptcy Court's order and judgment granting contempt sanctions.

DATED this 10th day of May 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE